SHOOK, HARDY AND BACON LLP
Naoki S. Kaneko (SBN 252285)
nkaneko@shb.com
5 Park Plaza, Suite 1600
Irvine, CA 92614
Tel: 949.475.1500

Amir M. Nassihi (SBN 235936)
anassihi@shb.com
M. Kevin Underhill (SBN 208211)
kunderhill@shb.com
Russell L. Taylor (SBN 345844)
rtaylor@shb.com
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: 415.544.1900

Attorneys for Defendant
The Hershey Company

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| REBECCA ESCOBAR, individually and on behalf of those similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>THE HERSHEY COMPANY,<br><br>    Defendant. | Case No. 5:24-cv-06844-EJD<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT, AND MEMORANDUM IN SUPPORT**<br><br>Judge: Hon. Edward J. Davila<br>Hearing Date: March 27, 2025<br>Time:            9:00 a.m. |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

FACTS ...................................................................................................... 2

LEGAL STANDARD ................................................................................. 5

ARGUMENT ............................................................................................. 6

I.    Plaintiff has not pleaded facts making it plausible that reasonable consumers would have been deceived by the alleged misconduct. ................... 6

II.   Plaintiff has not pleaded fraud with particularity. ........................................ 10

III.  Plaintiff has not pleaded facts showing "substantial similarity" between the products she bought and those she did not. .............................................. 13

IV.   Plaintiff cannot sue under Pennsylvania state law and cannot represent anyone who could do so. ................................................................................ 14

V.    The Court should dismiss all claims for equitable relief. Plaintiff has not pleaded facts showing legal remedies would be inadequate and her demand for injunctive relief is moot. ................................................................ 16

CONCLUSION ......................................................................................... 18

# TABLE OF AUTHORITIES

**Federal Cases**          **Page(s)**

*Almond v. Janssen Pharm., Inc.,*
  337 F.R.D. 90 (E.D. Pa. 2020)..................................................................16

*Argueta v. Walgreens Co.,*
  2024 WL 5186825 (E.D. Cal. Dec. 20, 2024) ........................................10

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .............................................................................5, 6

*Beasley v. Lucky Stores, Inc.,*
  400 F. Supp. 3d 942 (N.D. Cal. 2019)......................................................12

*Becerra v. Dr Pepper/Seven Up, Inc.,*
  945 F.3d 1225 (9th Cir. 2019) ...................................................................7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ......................................................................5, 6, 12

*Bruno v. U.S. Renal Care, Inc.,*
  No. 2:21-cv-04617-FLA, 2022 WL 2439525 (C.D. Cal. July 5, 2022) ...................16

*Buckley v. BMW N. Am.,*
  No. CV 19-1255-MWF, 2020 WL 3802905 (C.D. Cal. Mar. 9, 2020) ...................11

*Calcagno v. Kipling Apparel Corp.,*
  No. 23-cv-2247-BAS-BLM, 2024 WL 3261205 (S.D. Cal. July 1, 2024)...............16

*Cimoli v. Alacer Corp.,*
  587 F. Supp. 3d 978 (N.D. Cal. 2022).......................................................14, 15, 16

*Davidson v. Kimberly-Clark Corp.,*
  889 F.3d 956 (9th Cir. 2018) ...................................................................17

*Eclectic Prop. East, LLC v. Marcus & Millichap Co.,*
  751 F.3d 990 (9th Cir. 2014) ...................................................................6, 12

*Hamm v. Mercedes-Benz USA, LLC,*
  No. 5:16-cv-03370-EJD, 2022 WL 913192 (N.D. Cal. Mar. 29, 2022) ...................17

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) ................................................................6, 10, 12

*Kim v. Bluetriton Brands, Inc.,*
  No. 22-56063, 2024 WL 243343 (9th Cir. Jan. 23, 2024).........................6

*Klaehn v. Cali Bamboo LLC,*
  No. 21-55738, 2022 WL 1830685 (9th Cir. June 3, 2022) ....................................16

*Kroessler v. CVS Health Corp.,*
  977 F.3d 803 (9th Cir. 2020) ...................................................................................10

*Mazza v. Am. Honda Motor Co., Inc.,*
  666 F.3d 581 (9th Cir. 2012) ..................................................................14, 15, 16

*McGinity v. Procter & Gamble Co.,*
  69 F.4th 1093 (9th Cir. 2023) ...............................................................6, 7, 8, 9

*McKinney v. Corsair Gaming, Inc.,*
  No. 22-cv-00312-CRB, 2022 WL 2820097 (N.D. Cal. July 19, 2022) ...................17

*Miller v. Ghirardelli Chocolate Co.,*
  912 F. Supp. 2d 861 (N.D. Cal. 2012) ...................................................................13

*Moore v. Trader Joe's Co.,*
  4 F.4th 874 (9th Cir. 2021) .................................................................................7, 9

*In re NJOY, Inc. Consumer Class Action Litig.,*
  2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) .......................................................12

*Perez v. Nidek Co., Ltd.,*
  711 F.3d 1109 (9th Cir. 2013) ...............................................................................10

*Poston v. General Motors, LLC,*
  No. 24-cv-0082-BAS, 2024 WL 3558377 (S.D. Cal. July 22, 2024) ......................11

*Prukala v. Elle,*
  11 F. Supp. 3d 443 (M.D. Pa. 2014) ........................................................................7

*Puri v. Costco Wholesale Corp.,*
  No. 5:21-cv-01202-EJD, 2021 WL 6000078 (N.D. Cal. Dec. 20, 2021) ...................9

*Renn v. Otay Lakes Brewery, LLC,*
  No. 23CV1139-GPC(BLM), 2024 WL 331616 (S.D. Cal. Jan. 29, 2024) ..............17

*Roffman v. Perfect Bar, LLC,*
  No. 22-cv-02479-JSC, 2022 WL 4021714 (N.D. Cal. Sept. 2, 2022) ......................10

*Sanchez v. Nurture, Inc.,*
  626 F. Supp. 3d 1107 (N.D. Cal. 2022) ..................................................................13

*Sanchez v. Nurture, Inc.,*
  No. 5:21-cv-08566-EJD, 2023 WL 6391487 (N.D. Cal. Sept. 29, 2023).........*passim*

*Sonner v. Premier Nutrition Corp.,*
  971 F.3d 834 (9th Cir. 2020) ...................................................................................16

*Steinberg v. Icelandic Provisions, Inc.*,
    No. 21-cv-05568-EMC, 2022 WL 220641 (N.D. Cal. Jan. 25, 2022)........................9

*Swearingen v. Late July Snacks LLC*,
    No. 13-cv-04324-EMC, 2017 WL 4641896 (N.D. Cal. Oct. 16, 2017) ...................10

*Whiteside v. Kimberly Clark Corp.*,
    108 F.4th 771 (9th Cir. 2014) ...............................................................................7

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) .................................................................13

**California Cases**

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011)...........................................................................................10

*Shaeffer v. Califia Farms, LLC*,
    44 Cal. App. 5th 1125 (2020) ...........................................................................8, 10

**Other State Cases**

*Danganan v. Guardian Protection Servs.*,
    179 A.3d 9 (Pa. 2018) ...........................................................................................15

**Statutes**

21 C.F.R. § 101.9............................................................................................................3

21 C.F.R. § 101.13..........................................................................................................3

Fed. R. Civ. P. 8 ....................................................................................................5, 10, 12

Fed. R. Civ. P. 9 ..............................................................................................6, 10, 11, 12

U.S. Food, Drug, and Cosmetic Act ...............................................................................10

Pennsylvania's Unfair Trade Practices and Consumer Protection Law.................2, 5

1

## **INTRODUCTION**

2    This case turns on common sense. It involves chocolate candy bars, baking chips,

3  and similar products. It is common knowledge that such products contain saturated

4  fat; certainly anyone who has ever glanced at the back label of a candy bar knows this,

5  because the Nutrition Facts panel (NFP) there tells consumers not only that saturated

6  fat is present but exactly how much the product contains. Plaintiff does not allege the

7  NFPs on Lily's-brand products were incorrect. She claims she and others were misled

8  about the products' saturated-fat content, and so had no responsibility to read the

9  NFPs, because the front labels made *true* statements about *sugar* content. No

10 reasonable consumer would have been misled this way. The case should be dismissed.

11    First, Plaintiff has not pleaded facts making it plausible that reasonable

12 consumers would have been deceived (or that she was deceived). She points to the

13 statements "less sugar" and "no sugar added" on the products' front labels, but does not

14 allege those statements were false. Her claim is based on an alleged technical violation

15 of FDA regulations that she says required Defendant to accompany those true

16 statements with another statement reminding consumers to read the back label—

17 which she concedes disclosed saturated fat. But under California and Ninth Circuit

18 law, consumers are *expected* to read back labels (and to have common sense).

19 Disclosures there can be ignored at the pleading stage only if a plaintiff shows it is

20 plausible that a product's front label would have conveyed a concrete, unambiguous,

21 and deceptive meaning to reasonable consumers, essentially deterring them from

22 reading further. Plaintiff points to nothing on these products' front labels—certainly

23 not true statements about sugar—that unambiguously conveyed to reasonable

24 consumers that the products contained little or no saturated fat. Had there been any

25 doubt, a reasonable consumer would have read the NFPs and gained precisely the

26 information Plaintiff claims Defendant concealed. She has therefore not shown it was

27 plausible that the alleged misconduct caused any harm to herself or others. For that

28 reason alone, all her claims should be dismissed.

Second, because Plaintiff's claims sound in fraud, she is required to plead her allegations with particularity, which she also has not done. She alleges virtually no facts about her own claims except that she is a California citizen who bought products at Sprouts stores in California sometime "during the class period." That is not enough to plead with particularity—especially since Plaintiff concedes that the products' labels changed during that period.

Third, even setting aside the arguments above, Plaintiff has not alleged facts showing she has standing to bring claims regarding the many products identified in the complaint that she did not personally buy.

Fourth, the Court should dismiss Count IV of the complaint because California law applies to Plaintiff's claim and she has no basis for asserting claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law.

Finally, at a minimum, the Court should dismiss the UCL and unjust-enrichment causes of action and any other claims seeking equitable relief, such as restitution or injunctive relief. Plaintiff has alleged no facts showing her legal remedies would be inadequate if she could prevail on those claims, or that she has standing to seek prospective injunctive relief for a violation she concedes already has been corrected. For that reason as well, the Court should dismiss the complaint.

## **FACTS**

Plaintiff's complaint targets "Lily's" brand products. First Am. Compl. ¶¶ 1, 31. Though she defines the "Products" at issue to be all Lily's bars, baking chips, baking bars, peanut butter cups, and chocolate-covered nuts, she herself only bought three products: the Coconut Dark Chocolate Bar, Dark Chocolate Baking Chips, and Peppermint Flavor Baking Chips. FAC ¶ 26(a).

Plaintiff asserts that The Hershey Company was responsible for these products "at all relevant times" (*id.* ¶ 29), but her own allegations show that is not true. The original manufacturer was Lily's Sweets, LLC, which Hershey acquired in June 2021. *Id.* ¶ 38. As the FAC recognizes, it takes time to integrate newly acquired businesses.

*See id.* ¶ 46 (alleging Hershey told investors in April 2022 that Lily's was "on track" to be "fully integrate[d] by the following month"). Plaintiff further concedes that no later than "the spring of 2024"—and so well before Plaintiff filed suit—Hershey had already updated the products' labels to include the disclosure at issue in this case. *See id.* ¶ 101. (In fact the labels were updated even earlier, in August 2023.)

In general, Plaintiff complains that the Lily's products had nutrient content claims on the front label that were not accompanied by required disclosure statements. FAC ¶ 1. A nutrient content claim is a statement on a food label that "expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling" under FDA regulations. 21 C.F.R. § 101.13(b). "Nutrition labeling" refers to the "Nutrition Facts" panel that generally appears on a food's back label.



*See* 21 C.F.R. § 101.9; FAC ¶ 33 (showing the back label of one product, a more legible example of which is shown here). Here, the only nutrient content claims Plaintiff identifies are "less sugar" and "no sugar added." *See id.* ¶ 4. Plaintiff does not allege these statements are false or that Defendant violated any of the nutrient-content regulations that specifically apply to sugar claims.

Instead, Plaintiff alleges that the products' front labels should have directed consumers to read the NFP to learn how much saturated fat is in each product. *See,*

1   *e.g.*, FAC ¶ 1, 5, 7, 13, 18, 67–85; *see also id.* ¶ 33. Plaintiff's position is that because

2   there is a nutrient content claim (about sugar) on the front label, and because the

3   product contains more than 4.0 grams of saturated fat per serving, regulations also

4   required the disclosure statement, "See nutrition information for fat content." FAC ¶

5   12 (quoting 21 C.F.R. § 101.13(h)). According to Plaintiff, she relied on the sugar

6   nutrient content claims "and the truthfulness of Defendant's labels" when buying the

7   products. *Id.* ¶ 26. But again, nowhere does Plaintiff allege the sugar claims were false,

8   that the fat content disclosed on the products' NFPs was false, or that she did not know

9   food products have NFPs (and for good reason, because such a claim would lack

10  credibility). Nor does she allege she did not know products like these contain saturated

11  fat, or that reasonable consumers did not know this. She repeatedly suggests

12  reasonable consumers are unaware the products contain (according to her) high *levels*

13  of saturated fat (*e.g.* FAC ¶¶ 1, 7, 13, 18, 34, 101, 108, 120), but never alleges they

14  think the products are low-fat or fat-free.[1]

15      Moreover, as Plaintiff's examples show, many of the products' front labels

16  expressly state that the products contain ingredients such as coconut, peanut butter,

17  hazelnut butter, or nuts such as peanuts and almonds. FAC ¶ 31. Reasonable

18  consumers also know these ingredients contain fat, but again, any doubts would be

19

20

21  _____

22  [1] The FAC's lengthy discussion of the risks of too much saturated fat is irrelevant to

23  Plaintiff's claims, but is also exaggerated and misleading. In particular, foods like meat

24  and chocolate are not comparable. *See* Chocolate: Food of the Gods, Yale New Haven

25  Hospital (visited Jan. 15, 2025) (pointing out the differences); "Is the Saturated Fat in

26  Chocolate as Bad as the Fat in Meat?" *New York Times* (Apr. 5, 2019) (same). So

27  notwithstanding Plaintiff's horrified comparison of a chocolate bar to three pieces of

28  fried chicken (FAC ¶ 65), her chocolate-to-chicken comparison is apples to oranges.

1    resolved by the back labels, which specifically disclose the presence and amount of
2    saturated fat in each product. *Id.* ¶ 33.

3         Plaintiff's 62-page complaint alleges virtually nothing specific about her own
4    experiences. She defines "Products" as all "Lily's brand food products" that "bear
5    similar misrepresentations and lacked the required disclosure statement." FAC ¶ 1 &
6    n.2. But she bought only the Coconut Dark Chocolate Bar, Dark Chocolate Baking
7    Chips, and Peppermint Flavor Baking Chips. *Id.* ¶ 26(a). She includes images of the
8    front labels of the first two products but not the third. *See id.* ¶¶ 4, 31(a); 31(c).
9    Plaintiff states that she is a California citizen who bought these three products at some
10   point "during the Class Period" at "retailers throughout Santa Clara County including
11   Sprouts stores located in Sunnyvale, Cupertino, and Santa Clara." *Id.* ¶ 26(a). In doing
12   so, she alleges, "she relied on Defendant's prominent nutrient content claims...." *Id.* ¶
13   26(c). Presumably she is referring to "less sugar" and "no sugar added," the only alleged
14   nutrient content claims identified in the FAC. *See id.* ¶ 4. She never specifically alleges
15   that she believed the products were low in fat or fat free, however.

16        Plaintiff brings causes of action under California's UCL, FAL, and CLRA, on
17   behalf of herself and other California citizens. FAC ¶¶ 148–62, 163–75, 176–86. Her
18   fourth cause of action, however, is for violation of Pennsylvania's Unfair Trade
19   Practices and Consumer Protection Law (PA CPL). *Id.* ¶¶ 187–96. This appears to be
20   based on the fact that Hershey's principal place of business is in Pennsylvania (*id.* ¶
21   27), as this is the only mention of Pennsylvania. Plaintiff purports to bring that cause
22   of action on behalf of herself and a "nationwide class." The same is true of her fifth
23   cause of action for unjust enrichment. *Id.* ¶¶ 197–201. She seeks legal damages,
24   punitive damages, restitution/disgorgement, and injunctive relief. *Id.* at p. 60.

25                              **LEGAL STANDARD**

26        A plaintiff must allege sufficient facts to state a claim that is facially plausible.
27   Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v.*
28   *Twombly*, 550 U.S. 544, 555 (2007); *Sanchez v. Nurture, Inc.*, No. 5:21-cv-08566-EJD,

2023 WL 6391487, at *2 (N.D. Cal. Sept. 29, 2023). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. It is not enough to plead facts showing only that liability is "conceivable" or "possible"; plaintiffs must allege facts that cross the line to plausibility. *Twombly*, 550 U.S. at 570; *Eclectic Prop. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). The determination is "context specific, requiring the reviewing court to draw on its experience and common sense" when considering allegations. *Iqbal*, 556 U.S. at 663–64. A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully" and cannot rely on mere "labels and conclusions" to support a claim. *Id.*; *Twombly*, 550 U.S. at 555. Labels, conclusions, and mere assertions are not "facts" entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678–79. The rule requires, at a minimum, enough facts to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests…." *Twombly*, 550 U.S. at 555.

Any claims that are grounded in fraud must also be pleaded with particularity. Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126–27 (9th Cir. 2009); *Sanchez*, 2023 WL 6391487, at *2. Though in some cases a consumer-protection claim may not involve allegations of fraud, any such claim that *is* "grounded in fraud" (as all of them are here), whatever label the plaintiff may attach to it, is subject to the particularity requirement. *Kearns*, 567 F.3d at 1126–27.

## <u>ARGUMENT</u>

## I.    Plaintiff has not pleaded facts making it plausible that reasonable consumers would have been deceived by the alleged misconduct.

Plaintiff's claims all require her to plead facts making it plausible that reasonable consumers would have been deceived by the alleged misconduct. *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (UCL, FAL, and CLRA); *see also Kim v. Bluetriton Brands, Inc.*, No. 22-56063, 2024 WL 243343, at *2 (9th Cir. Jan. 23, 2024) (holding unjust-enrichment claims that "presume[d] the success of

[plaintiff's] consumer deception and fraud claims" failed for the same reason).[2] Plaintiff alleges only that the products' front labels were deceptive in the absence of the additional disclosure. But the Ninth Circuit has consistently held that deception claims must be evaluated in light of all the information reasonably available to a consumer, including not only information on a product's *back* (or side) label but also information that is commonly known and "contextual inferences" regarding a product and its packaging. *See, e.g.*, *McGinity*, 69 F.4th at 1097–99 (holding back label disclosed allegedly concealed facts); *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) ("information available to a consumer is not limited to the physical label"); *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019) (considering dictionary definitions, common knowledge, and other context).

The exception, as the Ninth Circuit recently clarified, is when a plaintiff has plausibly shown a product's front label is "unambiguously deceptive" to the point that a reasonable consumer "would feel no need to look at the back label." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 780 (9th Cir. 2014) (discussing *McGinity*, *Moore*, and other precedent). That was the case in *Whiteside*, the court held, because the plaintiff alleged facts making it plausible that the term "plant-based" would "convey[ ] a concrete and unambiguous meaning to a reasonable [consumer]: that the product is entirely plant-based and exclusively contains 'natural' materials." *Id*. at 782. In other words, it was plausible that a reasonable consumer would interpret the term as the plaintiff alleged without seeking out more information. *Id*. Under those circumstances, a court need not consider the back label at the pleading stage. *Id*. But again, that is an *exception* to the general rule. A plaintiff who has not made the necessary showing

---

[2] As discussed below, Plaintiff cannot bring a claim under Pennsylvania's UTPCPL, but that statute also requires proof a "reasonable consumer" would have been deceived. *See, e.g.*, *Prukala v. Elle*, 11 F. Supp. 3d 443, 447 (M.D. Pa. 2014).

1    cannot successfully argue that disclosures on the product's back label should be

2    ignored. *McGinity*, 69 F.3d at 1097–99.

3        Here, Plaintiff has not made the necessary showing, and that alone defeats all

4    her claims. She does not dispute, nor could she, that the products' back label plainly

5    disclosed exactly the information she claims Defendant concealed: the presence and

6    amount of saturated fat. And she has not alleged facts making it remotely plausible

7    that anything about the products' front labels would convey to a reasonable consumer

8    any "concrete and unambiguous" message about saturated fat. Reasonable consumers

9    already know chocolate contains it, for one thing; but even if that were not true, the

10   front labels say nothing that would deter a reasonable consumer from reading the NFP

11   to learn that information.

12       As discussed above, Plaintiff focuses on the front-label nutrient content claims

13   "less sugar" and "no sugar added." *See* FAC ¶¶ 4, 30 (identifying these as the allegeed

14   nutrient content claims); *see also id.* ¶ 26 (alleging Plaintiff read and relied on these).

15   But obviously those claims involve sugar, not fat. Plaintiff alleges no facts showing, for

16   example, that reasonable consumers think "less sugar" necessarily also means "less

17   fat" or none at all. She has alleged no connection between the former and the latter.

18   *See Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1139 (2020) (holding claim

19   failed due to lack of connection between "no sugar added" representation and allegedly

20   concealed information); *Sanchez*, 2023 WL 6391487, at *6–9 (holding allegedly

21   deceptive health claim did not equate to deception "as to other attributes of the

22   Products, such as their sugar content…."). As this Court pointed out in *Sanchez*, "[j]ust

23   because a defendant truthfully advertises one of its product's health benefits does not

24   mean that it has committed fraud or deceived consumers as to all other conceivable

25   unhealthy consequences that were not disclosed." *Id.* at *6. There must be a "nexus"

26   between the representations and the harm allegedly suffered. *Id.* That is lacking here.

27       Other than the sugar statements, Plaintiff does not allege reliance on any other

28   words or imagery on the labels, and for good reason—they cut against her argument.

1    For example, Plaintiff alleges she bought the Coconut Dark Chocolate Bar, and coconut

2    is very high in saturated fat. The front labels (and the names) of other products

3    mentioned in the complaint disclose that they are filled with (among other things)

4    hazelnut butter and peanut butter, as well as chocolate-covered nuts or popcorn. *Id.* ¶

5    31. Nothing about these products' front labels send a message, much less a "concrete

6    and unambiguous message," that would steer reasonable consumers away from reading

7    the rest of the label to learn about saturated fat. If anything, the opposite is true.

8        That resolves this case. The products' front labels make no promises whatsoever

9    about saturated fat, and even if there were some uncertainty about the fat content, the

10   Court would still have to "consider what additional information other than the front

11   label was available to consumers of these products." *McGinity*, 69 F.4th at 1098. And

12   just as in *McGinity*, "[u]pon seeing the back labels, it would be clear to a reasonable

13   consumer" not only that these products contain saturated fat, but exactly how much

14   they contain. *Id*; *see also, e.g.*, *Moore*, 4 F.4th at 882–85 (holding claim failed because a

15   reasonable consumer could clarify any ambiguity about meaning of "100% New Zealand

16   Manuka Honey" by examining the rest of the packaging). Plaintiff has not shown it is

17   plausible that a reasonable consumer would ignore these clear disclosures. *See also,*

18   *e.g., Steinberg v. Icelandic Provisions, Inc.*, No. 21-cv-05568-EMC, 2022 WL 220641

19   (N.D. Cal. Jan. 25, 2022) (holding any ambiguity caused by front label would have been

20   cured by disclosure on back label); *Puri v. Costco Wholesale Corp.*, No. 5:21-cv-01202-

21   EJD, 2021 WL 6000078, at *7 (N.D. Cal. Dec. 20, 2021) (holding that if consumer was

22   concerned product contained too little cocoa or too much oil or fat, "any initial

23   ambiguity could be resolved by the back label of the products, **as any reasonable**

24   **shopper would know**"; emphasis added).

25       Finally, none of this is affected by Plaintiff's allegation that Defendant violated

26   FDA regulations by (temporarily) failing to accompany nutrient content claims about

27   sugar with a reference to the NFP. Even if she were right about the violation, that

28   alone would not entitle her to sue. Private plaintiffs cannot sue merely to enforce

violations of the Food, Drug, and Cosmetic Act (or its regulations). *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 808 (9th Cir. 2020); *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1119 (9th Cir. 2013); *Argueta v. Walgreens Co.*, 2024 WL 5186825, at \*4–5 (E.D. Cal. Dec. 20, 2024). The *FDA* might choose to enforce a technical violation of the regulations (though Plaintiff concedes any violation here has already been corrected). But a private plaintiff must adequately plead all the elements of a state-law claim. Here that includes not only the reasonable-consumer standard but also standing, reliance, and causation. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326–27 (2011) (holding plaintiff must have suffered economic harm *as a result of* the alleged violation).

Plaintiff does not allege she was harmed because saturated fat injured her, that she could not resell the product, or anything of that kind. She alleges only that the allegedly non-compliant front label caused her to lose money because of a purchase she otherwise would not have made. That is reliance. For the same reasons discussed above, Plaintiff has not plausibly pleaded that her alleged harm actually resulted from any misconduct. *See, e.g., Shaeffer,* 44 Cal. App. 5th at 1133, 1143–45 (appling *Kwikset*; holding that even if front label was "unlawful," plaintiff did not plausibly allege it caused her harm); *Roffman v. Perfect Bar, LLC*, No. 22-cv-02479-JSC, 2022 WL 4021714, at \*5–6 (N.D. Cal. Sept. 2, 2022) (dismissing for failure to allege reliance where plaintiffs' theory was "that the front-label protein claim is unlawful without a corresponding figure on the nutrition facts panel"); *Swearingen v. Late July Snacks LLC*, No. 13-cv-04324-EMC, 2017 WL 4641896, at \*2–3 (N.D. Cal. Oct. 16, 2017) (applying *Kwikset*; dismissing claims based on violations of labeling regulations where plaintiffs did not plead harm resulting from reliance). For the reasons above, Plaintiff has not plausibly pleaded a claim. The Court should dismiss the FAC with prejudice.

## II.   Plaintiff has not pleaded fraud with particularity.

Another basis for dismissal is Plaintiff's failure to plead fraud with particularity. Fed. R. Civ. P. 9(b). All of her claims here are "grounded in fraud," and so are subject to Rule 9(b) as well as Rule 8. *Kearns*, 567 F.3d at 1126–27. This means the allegations

must be stated with "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Poston v. General Motors, LLC*, No. 24-cv-0082-BAS, 2024 WL 3558377, at *3 (S.D. Cal. July 22, 2024) (citation omitted). While Plaintiff identifies two specific statements—the nutrient content claims—she does not allege those were false, and her allegations of reliance on them are conclusory (and unconnected with the alleged concealment of fat). FAC ¶ 26. Plaintiff identifies three products she allegedly bought, but does not allege *when* she bought any of these except to assert that it was "on multiple occasions during the class period." *Id*. That cannot be enough to satisfy Rule 9(b).

According to Plaintiff, "the class period" could be up to six years long. FAC ¶ 138g (the UTPCPL limitations period). Her allegations therefore tell us only that she bought three or more products on three or more occasions sometime between Nov. 20, 2018, and the filing date six years later in 2024. A consumer might be excused for not remembering the exact date of a purchase, but here Plaintiff has not even narrowed it down to a particular *decade*. There is "no excuse" for failing to plead such "basic information" about a plaintiff's own claim. *Buckley v. BMW N. Am.*, No. CV 19-1255-MWF, 2020 WL 3802905, at *10–12 (C.D. Cal. Mar. 9, 2020) (holding "the middle of September" was insufficient).

This requirement is far from a technicality here. Again, Plaintiff contends the class period began in November 2018, and for her California claims it would have begun in November 2020. But she concedes Hershey did not even acquire Lily's Sweets, LLC, until June *2021*. FAC ¶ 38. She also concedes that no later than "the spring of 2024," Hershey had updated the products' labels to include any required disclosures. *Id*. ¶ 101. (In fact the labels were updated in August 2023.) So based on Plaintiff's own allegations, it is possible that she never bought any product sold by Hershey that violated the FDA regulations she cites, or (put another way) every product she bought may have contained the required disclosure that she admits was on the product during

part of the class period. Even under Rule 8, it is not enough to plead facts showing only that liability is "conceivable" or "possible"; at a minimum plaintiffs must allege facts that cross the line to plausibility. *Twombly*, 550 U.S. at 570; *Eclectic Prop. East*, 751 F.3d at 997. Here Plaintiff's fraud allegations violate Rule 8 as well as 9(b).

Plaintiff likely will argue that some district courts have held it is enough to plead a purchase "during the class period." But for Rule 9(b) to have any meaning, it must require that allegations be particular as to the named plaintiff's *own* fraud claims—not someone else's, especially when that person is not before the court. For that matter, *Kearns* itself shows individual particularity is required. That too was a consumer class action, in which the named plaintiff alleged he and class members had been "exposed to" various representations during the class period and that some other representations were specifically made to him. 567 F.3d at 1125–26. If Rule 9(b) allowed "class" pleading, that would have been enough. Yet the Ninth Circuit rejected it, in an analysis that focused entirely on the details of Kearns' *own* claim:

> In reliance on these representations, Kearns claims he purchased a [Certified Pre-Owned] vehicle…. [But] [n]owhere in the TAC does Kearns specify what the television advertisements or other sales material specifically stated. Nor did Kearns specify when **he** was exposed to them or which ones **he** found material. Kearns also failed to specify which sales material **he** relied upon in making **his** decision to buy a CPO vehicle. **Kearns does allege that he was specifically told "CPO vehicles were the best used vehicles available…." Kearns does not, however, specify who made this statement or when this statement was made**. Kearns failed to articulate the who, what, when, where, and how of the misconduct alleged. The pleading of these neutral facts fails to give Ford the opportunity to respond to the alleged misconduct. Accordingly, these pleadings do not satisfy the requirement of Rule 9(b)….

*Kearns*, 567 F.3d at 1125–26 (emphasis added); *see also, e.g.*, *Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942, 955–56 (N.D. Cal. 2019) (holding allegations that plaintiff bought product "repeatedly" during class period were insufficient); *In re NJOY, Inc. Consumer Class Action Litig.*, 2014 WL 12586074, at *10 (C.D. Cal. Oct. 20, 2014) ("named plaintiffs must, under Rule 9(b), plead separately and with particularity their

1    individual exposure" to alleged misrepresentations); *Yumul v. Smart Balance, Inc.*, 733
2    F. Supp. 2d 1117, 1124 (C.D. Cal. 2010) (also holding allegations of purchase during
3    class period were insufficient.). Here, Plaintiff's allegations fail for the same reasons.

4    **III.   Plaintiff has not pleaded facts showing "substantial similarity" between**
5          **the products she bought and those she did not.**

6          For somewhat similar reasons, Plaintiff has not pleaded facts showing she has
7    standing to bring claims regarding the products she did not buy. A plaintiff has
8    standing to do this only when there is "substantial similarity" between the purchased
9    and unpurchased products and the alleged misrepresentations at issue. *Sanchez v.*
10   *Nurture, Inc.*, 626 F. Supp. 3d 1107, 1116–17 (N.D. Cal. 2022) (citing cases). In
11   *Sanchez*, the plaintiff "provided a chart listing each challenged product and the
12   nutrient content claim" being made, which the Court held was enough to show that one
13   set of products were sufficiently similar "in name and in ingredients" as well as the
14   nutrient content claim being made. *Id*. at 1117. But it reached a different conclusion as
15   to another set, pointing out that "[t]he composition of the products varies significantly."
16   *Id*. The difference in ingredients was "dispositive." *Id. See also Miller v. Ghirardelli*
17   *Chocolate Co.*, 912 F. Supp. 2d 861, 868–72 (N.D. Cal. 2012) (holding that though
18   purchased and unpurchased chocolate products had some similarities, differences in
19   uses and labels were too great to allow plaintiff to bring claims for all).

20         Here, Plaintiff vaguely defines "the Products" at issue to mean *all* "Lily's brand
21   food products" or at least all those that "bear similar misrepresentations and lacked
22   the required disclosure statement." FAC ¶ 1 & n.2. She does not provide a chart or even
23   a list of these products, and only some of the products' labels are pictured in the FAC.
24   But even looking at the labels that are pictured, it is clear the products contain very
25   different ingredients. For example, some are made with dark chocolate, as were two of
26   the products Plaintiff allegedly bought, but many are not. Plaintiff does not allege that
27   all types of chocolate have the same level of saturated fat (because they do not).
28   Further, the labels show some products contain coconut and some do not, while others

contain caramel, hazelnut butter, peanut butter, nuts, popcorn, or none of the above. Again, this means the levels of saturated fat will differ. As in *Sanchez*, therefore, the composition of these products varies significantly. Plaintiff has not shown the products she did not buy are "substantially similar" for this reason alone. Moreover, Plaintiff has failed to plead not only her own purchase date(s), but also the dates that any of these various products were on the market. She alleges on information and belief that all the labels had been changed by no later than the spring of last year, but does not actually allege all were changed at the same time. So her allegations also do not show that the representations on the other products' labels were substantially similar. It is Plaintiff's burden to allege facts showing that products she did not buy are "substantially similar" to those she did. She has not met that burden.

## IV.     Plaintiff cannot sue under Pennsylvania state law and cannot represent anyone who could do so.

Plaintiff, a California consumer who made all her alleged purchases in California, and is suing under California consumer law on behalf of other California consumers, also brings a cause of action under *Pennsylvania* state law on behalf of a "nationwide class." FAC ¶¶ 187–96. The rationale appears to be that because Hershey's principal place of business is in Pennsylvania, that state's consumer law should apply to any claims against it, no matter where those claims are brought, even if those claims have no other connection to Pennsylvania. That argument has been tried before and was squarely rejected in a well-reasoned opinion by Judge Freeman. *Cimoli v. Alacer Corp.*, 587 F. Supp. 3d 978 (N.D. Cal. 2022). This Court should follow suit.

A federal court in California sitting in diversity must apply California's choice-of-law rules. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012); *Cimoli*, 587 F. Supp. 3d at 989. Applying those rules to a purported multi-state consumer class action, the Ninth Circuit held that each state's law would necessarily apply to the claims of its own citizens. *Id.* at 590. The most important element of this analysis was "the place of the wrong"—in a consumer case, the state where the

purchase was made. *Id.* In short, "[u]nder California choice of law rules, the place of the wrong is where the transaction related to the misrepresentation occurred and not where the intention to misrepresent was formed." *Cimoli*, 587 F. Supp. 3d at 989 (citing *Mazza* and *Shuman v. SquareTrade Inc.*, No. 20-cv-02725-JCS, 2020 WL 7458001, at *6 (N.D. Cal. Dec. 18, 2020) (collecting cases)). Here, Plaintiff says virtually nothing about her own transactions *except* that they occurred in California. Her claims are governed by California law.

The FAC offers no explanation for why a California consumer might be asserting a violation of Pennsylvania law, but *Cimoli* does. A few years ago, Pennsylvania's Supreme Court held that "a non-Pennsylvania resident may bring suit under the UTPCPL against a Commonwealth-headquartered business based on transactions that occurred out-of-state." *Danganan v. Guardian Protection Servs.*, 179 A.3d 9, 17 (Pa. 2018) (answering question certified by Third Circuit). Like Plaintiff here, Cimoli was a California resident who bought a product in California and then sued its Pennsylvania manufacturer under the UCL. 587 F. Supp. 3d at 982–83. And just as in this case, Cimoli also brought a cause of action under the UTPCPL purporting to act on behalf of a "nationwide class." *Id.* at 983. He appears to have conceded that California law would apply to his claim, which is unsurprising in light of *Mazza*, but he argued he could *also* bring a claim under Pennsylvania law at the same time. *Id.* He further suggested that the court might wish to defer making a decision on this point until the class-certification stage. *Id.*

Judge Freeman rejected these arguments, holding that California law would apply to Cimoli's claim and that there was no reason to defer the analysis because the answer would not change. *Id.* at 985–96. It was plain that the California and Pennsylvania statutes were materially different. *Id.* at 990–91. As *Mazza* held, the state with the predominant interest in which law applies would be the one in which the transaction occurred (a purchase by one of its own citizens). *Id.* at 991–95. And finally, because California was "the place of the wrong," its interests would be more impaired

1    (compared to Pennsylvania's) by application of the other state's law. *Id.* Thus, under

2    California choice-of-law rules, California law applied to Cimoli's claim. His argument

3    that he could *also* pursue a claim under Pennsylvania law made no sense, given that

4    the whole point of a choice-of-law analysis is to choose *which* law applies. *Id.*

5        If Plaintiff has any viable claim here (under consumer statutes or for unjust

6    enrichment), it would be under California law and only California law. And as *Mazza*,

7    *Cimoli*, and many other cases have held, that means she would have no basis for

8    representing consumers whose claims have no connection with California. *See Cimoli*,

9    587 F. Supp. 3d at 996–97 (dismissing UTPCPL claim without leave to amend and

10   striking nationwide-class allegations). For that matter, even federal courts in

11   Pennsylvania have rejected this UTPCPL argument, and those courts are not bound by

12   *Mazza. See Almond v. Janssen Pharm., Inc.*, 337 F.R.D. 90, 98–100 (E.D. Pa. 2020)

13   (granting motion to strike nationwide-class allegations for same reason as in *Cimoli*).

14   This Court should dismiss Plaintiff's Pennsylvania claim.

15   **V.    The Court should dismiss all claims for equitable relief. Plaintiff has**

16        **not pleaded facts showing legal remedies would be inadequate and her**

17        **demand for injunctive relief is moot.**

18        A plaintiff seeking equitable relief must, among other things, plead facts

19   showing that the plaintiff "lacks an adequate legal remedy." *Sonner v. Premier*

20   *Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020); *see Klaehn v. Cali Bamboo LLC*, No.

21   21-55738, 2022 WL 1830685, at *3 (9th Cir. June 3, 2022) (applying *Sonner*). This is a

22   pleading requirement that a plaintiff cannot avoid by (for example) alleging legal and

23   equitable claims in the alternative and arguing that whether the legal remedies are

24   adequate cannot be known until later. *See Klaehn*, 2022 WL 1830685, at *3 (holding

25   alternative-pleading argument was "irrelevant"). Legal and equitable claims can be

26   alleged in the alternative, but only if both alternatives are adequately pleaded. *Id.*; *see,*

27   *e.g.*, *Calcagno v. Kipling Apparel Corp.*, No. 23-cv-2247-BAS-BLM, 2024 WL 3261205,

28   at *11 (S.D. Cal. July 1, 2024); *Bruno v. U.S. Renal Care, Inc.*, No. 2:21-cv-04617-FLA,

2022 WL 2439525, at *7 (C.D. Cal. July 5, 2022); *McKinney v. Corsair Gaming, Inc.*,
No. 22-cv-00312-CRB, 2022 WL 2820097, at *10 (N.D. Cal. July 19, 2022); *Hamm v.
Mercedes-Benz USA, LLC*, No. 5:16-cv-03370-EJD, 2022 WL 913192, at *2 (N.D. Cal.
Mar. 29, 2022) (citing cases). Plaintiff has not done so here.

First, the Court should dismiss Plaintiff's claims to the extent they seek
equitable relief, namely restitution or "disgorgement." Here, Plaintiff seeks legal
damages under both her CLRA and UTPCPL causes of action. FAC ¶¶ 186, 196. She
alleges no facts showing those damages would necessarily be inadequate, making only
legal arguments (which make no sense) and conclusory assertions that are not entitled
to the presumption of truth at the pleading stage. *Id.* ¶¶ 160–61, 173, 200. For that
matter, she concedes her allegations along those lines are "hypothetical" unless she
cannot win otherwise. FAC ¶¶ 161, 173. For example, she claims she and class
members "will lack an adequate remedy at law if the court requires them to show
classwide reliance and materiality"—apparently conceding they would not be able to
make that showing. *Id.* But again, whether their legal remedies would be "adequate"
has nothing to do with whether they can ultimately prove their legal claims, nor can
they evade a pleading requirement by asking a court to "wait and see." The Court
should dismiss the equitable claims.

Second, the Court also should dismiss Plaintiff's claims for injunctive relief. In
some cases, a plaintiff may be able to plead facts showing that legal remedies are
inadequate because (for example) she needs an injunction that would protect her
against a risk of future injury. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969
(9th Cir. 2018). But that risk must be "actual and imminent, not conjectural or
hypothetical…." *Id.* (citation omitted). Where the alleged risk is based on concern about
being misled by product labels, a plaintiff who alleges she has now "learned the truth"
should have difficulty establishing any future risk. In *Davidson*, the court held a
consumer could do so by plausibly alleging that she wanted to buy the product again in
the future but would be unable to because of uncertainty about the labels. *Id.*; *see Renn*

*v. Otay Lakes Brewery, LLC*, No. 23CV1139-GPC(BLM), 2024 WL 331616, at *6–7 (S.D. Cal. Jan. 29, 2024) (discussing *Davidson*). Plaintiff alleges nothing of the kind here. To the contrary, she concedes that any problem with the labels has already been corrected. Even if that were not true, having filed suit, she cannot plausibly deny being aware that the level of saturated fat in the product is disclosed, in accordance with FDA regulations, in the Nutrition Facts label. In short, Plaintiff has no standing to seek prospective injunctive relief for a violation she not only knows about but concedes Hershey corrected more than a year ago.

## **CONCLUSION**

The Court should grant Defendants' motion to dismiss the complaint with prejudice.


Dated: February 6, 2025                    Respectfully submitted,

SHOOK, HARDY & BACON LLP

By: */s/ Naoki S. Kaneko*
     Naoki S. Kaneko

Attorneys for Defendant

1

## CERTIFICATE OF SERVICE

2          The undersigned attorney hereby certifies that on February 6, 2025, I caused a

3  true and correct copy of the foregoing Defendants' Motion to Dismiss to be filed

4  electronically.  Notice of this filing will be sent to all parties registered on this Court's

5  ECF system by operation of the Court's electronic filing system.  The Parties may

6  access this filing through the Court's system.

7                                         */s/ Naoki S. Kaneko*
                                          Naoki S. Kaneko
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28